

# THE ATTORNEY GENERAL
# OF TEXAS

## AUSTIN, TEXAS 78711

JOHN L. HILL
ATTORNEY GENERAL

May 1, 1974

The Honorable Ben F. McDonald, Jr.
Executive Director,
Texas Department of Community Affairs
P. O. Box 13166, Capitol Station
Austin, Texas 78711

Opinion No. H- 289

Re: Whether Parks & Wildlife
Dept. may furnish food
and housing as part of com-
pensation paid to employees
under federally funded pro-
gram for youths.

Dear Mr. McDonald:

You have submitted two questions to us concerning a proposed program
to operate a State Youth Conservation Corps this summer. The program
authorized by the United States Congress, October 27, 1972, under the
provisions of Public Law 92-597, will provide federal funds to employ
youths aged fifteen through eighteen to work in Texas state parks for a
period of eight weeks. The youths will work approximately thirty hours
a week to perform various maintenance tasks in the parks.

The Texas Department of Community Affairs (hereafter, Community
Affairs) entered a cooperative agreement with the United States Depart-
ment of Agriculture and the United State Department of the Interior on
December 13, 1973, to serve as the "prime grantee" responsible for
arranging the State Youth Conservation Corps Program.

Community Affairs and the Texas Parks and Wildlife Department
(hereafter, Parks and Wildlife) propose to implement the program under
an interagency cooperation contract whereby Parks and Wildlife would
be responsible for actual operation of the program this summer. Under
such a contract, Community Affairs would reimburse Parks and Wildlife
for a portion of the operating costs incurred in the program.

One of the federal requirements governing the operation of the program
is that some arrangement must be made for the youths to secure adequate
food and housing for the duration of their employment at the state park.
The most expedient and surest method to provide food and housing to the
youths is for Parks and Wildlife to provide it, either directly or through
an independent contractor.

Your questions are:

1.  Under the circumstances set forth above, is Parks and Wildlife legally empowered to expend funds for feeding and housing the youths it employs?

2.  If the above question is answered in the affirmative, do Community Affairs and Parks and Wildlife have the legal authority to enter an interagency cooperation contract whereby Community Affairs reimburses a portion of the costs incurred by Parks and Wildlife in providing such food and housing?

The answer to your first question would depend upon (1) the existence of general legislation authorizing the Parks and Wildlife to engage in the described activities (Article 3, Sec. 44, Constitution of Texas) and (2) a specific appropriation for those purposes (Article 8, Sec. 6, Constitution of Texas).

Bearing in mind that all powers, duties and authority of the State Parks Board have been transferred to Parks and Wildlife (Article 978f-3a, Vernon's Texas Penal Auxiliary Laws, Sec. 4), we are of the opinion that there is ample pre-existing general law to authorize the expenditure you describe.

Article 6070b, V. T. C. S.,

> "Sec. 1.  The Texas State Parks Board is hereby authorized and <u>empowered</u> to acquire State park sites by purchase, gift or otherwise, and <u>to improve, beautify and equip</u>, and <u>to contract</u> with any person, firm or corporation <u>for the improvement, beautification or equipment</u> of the State parks of this State to such an extent as to said Board might be deemed advisable. The authority herein given to purchase is limited to two years from the effective date of this Act . . . . "
> (Emphasis added)

The Parks and Wildlife Department has ample authority to contract for the maintenance of state parks by virtue of Sec. 1 of Article 6081r, V. T. C. S., which provides, in part:

" . . . The Parks and Wildlife Department is hereby
authorized and directed to cooperate . . . with all other
departments of the state and <u>local governments</u> . . . .
It is the intent of the Legislature <u>to add to the purposes,
functions and duties of</u> . . . <u>counties</u>, to acquire lands
for public recreation purposes, to construct thereon
facilities for public use, to provide for the operation,
maintenance and supervision of such public recreation
areas, and <u>to enter into agreements</u> with other local,
<u>state</u> or Federal <u>Agencies</u> for planning, construction,
<u>maintenance</u>, and operation of <u>such facilities</u>, together
with necessary access roads thereto, <u>and to maintain
adequate sanitary standards</u> on the land and water areas
as a part of and adjacent to such recreation areas."
(Emphasis added)

And see Attorney General Opinion H-170 (1973).

We think that clearly if Parks and Wildlife finds it necessary or
convenient to furnish to its employees both lodging and meals as part
of their compensation, it has the authority to do so.

It has been suggested that Secs. 50 and 51 of Article 3 of the Texas
Constitution would prohibit the use of these funds. We have had numerous
occasions to write concerning the requirements of these sections and
have concluded, with ample judicial support, that they require only that
the expenditure of funds be made for a proper public purpose. <u>State v.
City of Austin,</u> 331 S.W. 2d 737 (Tex. 1960); Attorney General Opinions
C-584 (1966); H-143 (1973); O-4140 (1941).

Whether there is such a purpose is a decision for the Department
which will be overturned by the courts only if it is clearly arbitrary.

Appropriations for the proposed purposes may be found in the General
Appropriations Act for 1974 - 1975 (Acts 1973, 63rd Leg., ch. 659, p. 1786)
in items 7, 12 and 23 of the appropriation to the Parks and Wildlife Depart-
ment at pages 2005 and 2007, as follows:

"7. Seasonal and Part-time help                667,754          726,972

"12. Park Improvements

"A. State Comprehensive Outdoor
   Recreation Plan - - for up-
   dating Texas' comprehensive
   outdoor recreational plan,
   including personal services,
   classified personnel, travel
   and other expenses                        327,295          335,606

"B. Maintenance, repairs and equip-
   ment; including wages and other
   expenses, whether by contract
   or direct payments, in exist-
   ing State Parks                            459,750        1,142,700
                                                              & U.B.

"23. There is hereby appropriated from
    the Texas Park Fund, pursuant to
    Article 4 of House Bill 730, Acts
    of the Sixty-Second Legislature,
    Regular Session, 1971, for the pur-
    pose of planning, acquisition and
    development of State parks and
    State historic sites. Such expend-
    itures include, but are not limited
    to, salaries and wages, professional
    services and fees, travel, capital
    outlay, including land and improve-
    ments thereto, and all other neces-
    sary costs and expenses whether by
    contract or direct payments."        12,000,000       12,000,000
                                                              & U.B.

The receipt and use of federal funds for these purposes is expressly authorized by Section 19 of Article V of the Appropriations Act (supra, at p. 2208) and by rider to the Parks and Wildlife appropriation at page 2012.

We therefore answer your first question that, in our opinion, Parks and Wildlife is legally empowered to expend funds for feeding and housing the youths it employs.

The program in question was authorized by Public Law 92-597, 86 Stat. 1319 amending the Youth Conservation Corps Act of 1970 (Public Law 91-378, 84 Stat. 794). The original act provided a youth conservation corps as a pilot program within the Departments of Interior and Agriculture. The amendment extended the program to pilot programs on state lands financed by federal grants.

Reciting the high unemployment rate among young people 16-19 years of age, the report of the House of Representatives recommending Public Law 92-597 (House Report No. 92-1460, 1972 U.S. Cong. and Ad. News, p. 4943) states its purpose to be "to provide additional employment for young people ages 15 through 18 . . . "

The Community Affairs was created by Acts 1971, 62nd Leg., ch. 879, p. 2697 [now found as Article 4413 (201), V.T.C.S.]. One of the powers expressly conferred upon the Department by that Act is found in its Sec. 4(12) requiring the Department to "administer, as appropriate, State responsibilities for programs created under . . . federal acts creating economic opportunity programs."

In our opinion, the program of the Youth Conservation Corps Act is an economic opportunity program and is one the Department of Community Affairs is expressly directed to administer on behalf of the State.

The Interagency Cooperation Act, Art. 4413 (32), V.T.C.S. authorizes and encourages contractual arrangements between various arms of the State government to carry out its functions. Section 3 provides:

> "Any state agency may enter into and perform a written agreement or contract with other agencies of the state for furnishing necessary and authorized special or technical services, including the services of employees, the services of materials, or the services of equipment . . . . "

It is our opinion that the two statutes, Article 4413 (201) and Article 4413 (32), V.T.C.S., acting in concert, give to Community Affairs the general authority to act on behalf of the State under the Youth Conservation Corps Act and to contract with Parks and Wildlife to actually

implement the program by putting young people to work. We are further of the opinion that these acts would authorize expenditures to feed and house those youths so employed.

Among the appropriations to Community Affairs (Appropriation Act for fiscal 1974-1975, supra, at p.1929) is item 9 "Grants to State Agencies and local Governments". As in the case of Parks and Wildlife, the use of federal funds is expressly authorized by the Appropriations Act, supra at p. 2208. And see Sec. 25 of Article V of the Appropriations Act, supra, at p.2209.

In summation, it is our opinion that there is both pre-existing general law and specific appropriations authorizing the Department of Community Affairs and the Parks and Wildlife Department to enter into an interagency cooperation contract to carry out the program of the Youth Conservation Corps Act, including the expense of feeding and housing young people employed by it.

### SUMMARY

The Parks and Wildlife Department is authorized to expend funds to feed and house young people employed by it in maintaining state parks and is authorized to con - tract with the Department of Community Affairs for the reimbursement of those expenses, or a part of them, with federal funds.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

LARRY F. YORK, First Assistant

DAVID M. KENDALL, Chairman
Opinion Committee